Good morning. My name is John Seidlitz. I have the privilege to represent Brent Schmasow here before you. Brent Schmasow is a social security question before you. He suffered a brain bleed in September of 2006. He woke up in a pool of blood. He suffered from residual issues from the brain injury. Do we know what caused this fall and this terrible bloodbath? It's a chicken and egg. Did he fall and have a brain bleed? Did he have the brain bleed and cause the fall? We don't know. All we know is he wakes up or they find him in this pool of blood, so we don't know. He ultimately applies for social security alleging disability as of that date, the date of the brain bleed. We have a hearing in September of 2006. In the course of the September 06 through 08 hearing, he receives treatment. Treatment from James Hind is his primary treater. In the course of that, in the application process, social security sends him to a psychiatrist for some mental treatment, mental testing. The problem he's suffering from is language problems. His problem is stuttering somewhat like I've got a temporary tooth in here and I can't speak today. But he has language problems. He has problems in terms of language and not getting the word out. He can't find words and they just won't come. He has balance problems and that includes initially both static, standing here, being out of balance, and walking balance problems. And then he has memory problems. He receives treatment over the course of time and there is improvement over the course of time. He continues to suffer from all of those problems through the date of the hearing. At the day of the hearing, the administrative judge finds that Brent is no longer disabled as of February 26, 2008. He finds him disabled from September 06 through February 25 of 08, based upon the symptoms that I've just described from the medical condition I've just described. But says that after that date, there is both medical improvement and that that medical improvement relates to his ability to work. And says from then on. So he receives what's the vernacular as a closed period. Now, the issue that we face and in terms of reviewing the briefing and what else we can offer here in terms of oral argument, the issue I think becomes a comparison of what date do we look at in terms of the medical improvement. There is no doubt there's medical improvement between September 1st, 06, when he's laying in the pool of his own blood, and February 26th of 08. There is improvement there. But at what point does the judge compare and does the reviewing court compare to see if the evidence supports the finding of medical improvement? For the first time on appeal to this court. Well, medical improvement relative to work. Well. Adequate, I wouldn't think, is it just to be medically improved. You have to be improved enough to go to work. You need them both. First, you have to have medical improvement before you even explore whether that relates to the work. But you need to say, is there medical improvement? So as in this case that the ALJ cuts him off or says he's no longer disabled. Now, on appeal, down below, both counsel for the commissioner and myself had argued a mistaken old case that had been changed by law in terms of a presumption of continuing disability. I think the magistrate gracefully just ignored both of us and didn't incorporate that. But on appeal, there's a new issue raised. And that issue is the comparison point when you say, is there improvement here? They want to say that relates back to September of 06. And I think that's a critical error. It's a new issue. It's not ruled on. And I think it's contrary to the regulations. And here's why. And the regs, as you are aware, become very detailed. But in defendant's brief at page 23, they cite this comparison date regulation. The issue about referring back to September of 06 for comparison date relates to an internal operating rule, not a regulation. What this regulation provides is that if we're going to determine medical improvement, we compare the current medical with the most recent favorable medical decision that you were disabled. I know. To determine medical improvement, we compare current medical impairment with the most recent favorable medical decision that you were disabled. So when is the most recent decision that we compare? Because I think the defendant's brief concedes essentially that if we start at February 08 and start looking backwards at medical records, the treating physician saw him in August of 07, that there's essentially no change between August 07 and February 08. I think if you go back to April 07, there's no change. But if we compare the most recent. Now, the rules continue. The most recent favorable decision is the latest decision involving consideration of the medical evidence and the issue of whether you were disabled or continue to be disabled, which becomes final. Now, I've tried to back up because we didn't argue this in front of the district court to make sense of that. The final decision in this case is that Brent Smarshaw is disabled from September 06 through February 25 of 08. The judge awarded, the ALJ awarded him that closed period. That's not on appeal. That's the final decision. So if that is the most, if that's the final decision, we back up from then to look at the most recent medical evidence, it would be Dr. Hines' medical notes from August of 07. If we compare the August of 07 record to Dr. Hines' February 26, 08 record, that's the date the judge finds him no longer disabled. There's no change. In fact, if there's anything, it's worse. He continued to have language problems. He couldn't find words. He continued to have memory problems. But Dr. Hines does say that he has no need for further rehabilitation follow-up and that he is relatively stable. I think that's absolutely uncontested and meaningless in terms of medical improvement. That just means there's nothing more to be done for you. You are as good as you're going to get. And I think early on Dr. Hines had indicated that he had expected a year or two years before Brent would reach maximum improvement. And I think February 08 finding that you're referring to is about that time. I think in the course of treatment, you know, the body heals and there's only certain amounts of treatment you can give them, and people that are injured get to a certain point. And that's where Brent was on February 26 of 08. But the problem is I think the ALJ may have focused on that to suggest that means now there's improvement. But if we compare the language problems, the balance problems, the memory problems, there's no evidence of any improvement. And I'd like to reserve the remainder of my time. Thank you. Thank you. May I please the court, David Blower for the Commissioner of Social Security. As he said, there's no dispute. The plaintiff was obviously significantly impaired for some period of time, and indeed the ALJ found him disabled for 18 months. And so the question is whether there was medical improvement, and more specifically what are the comparison dates for medical improvement. No one at the lower court identified two specific points to compare. So that was something that I identified in the brief. And I think that plaintiff's reliance on his reading of the regulations is not correct. In this case, there's only one final decision, and that's the decision that the ALJ rendered after the September 2008 hearing. So there's only one final decision. I'm sorry, the final decision is which one? The ALJ's decision rendered after the September 2008 hearing. Okay. But we have to have some, the regulations do require some kind of comparison between two points. So what's our starting point? That's correct. And that's why I think the POMS, the Program Operations Manual System, which is cited in my brief, is helpful. Because the regulations contemplate a prior decision and the current decision. And in this case, because it's a closed period, there is only one decision. So the question is what do we compare the current status to? And the POMS say it's the onset of disability, which is September 2006. And that's the only law. Also cited in my brief is an Eastern District of Michigan case, which appears to be the only published case that holds on this, what the comparison point is for a closed period of disability. And they also find that it's the onset of disability. If we're to accept your view on that, that we do that comparison, then we come down to, as opposing counsel says, okay, he's now as good as he's ever going to be. And is that a level at which he's able now to work? Right. And the ALJ found that he was capable of a reduced range of light work full time. And he based that on a number of different factors. Plaintiff's own testimony, plaintiff's daily activities, and the opinions of the medical expert as well as his own treating physician. The medical expert being Dr. Kuka? Yes. Who did not look at him. He did not look at him. That's correct. I mean, he saw. And if we look at Dr. Stout, which is his treating physician who did look at him in February. Dr. Hind. I'm sorry, I'm talking about the private case. I'm sorry, Dr. Hind, who did look at him in February of 2008. I have to say, when I look at Dr. Hind's report, there's not very much I can glean from this. You do have some language that says he's relatively stable, no need for further rehabilitation follow-up, but then it says if he's not approved for social security disability or other form of assistance, then he's encouraged to work with vocational rehabilitation, which suggests that he still needs something. And then he adds, if they are not able to assist him and barriers are identified, he can certainly revisit disability. Now, this is a doctor. He's not the part of the system. These are nearly layman's views at this point rather than medical views, but it certainly suggests that Dr. Stout isn't persuaded that this man can go back to work. I think, to put that in context, there's an earlier opinion, I believe from April of 2007, where Dr. This is Dr. Hind. This is Dr. Hind. These are all Dr. Hind's views. He opines at that time that plaintiff wouldn't be able to return to his past work as a painter, which was medium work and which required him to work on ladders, and that those were the reasons that he found that he couldn't because he continues to have balance problems, and so it would be foolish for him to be working on ladders, and medium work requires lifting up to 50 pounds, and plaintiff testified he could only lift up to 30 pounds. So he obviously can't perform his past relevant work, and the ALJ found that. And the only other limitations that Dr. Hind opined to is that he needed lighter work, and the ALJ here found that he could do light work, which is lifting 10 pounds frequently and 20 pounds occasionally, and he said that he needed to not have to work at heights here. The ALJ found that he couldn't climb ladders, ropes, or scaffolds and should avoid hazards. So I think that the ALJ's ultimate RFC finding as for not disability is consistent with Dr. Hind's earlier opinion. Are we to draw any inference? I'm looking at the April report, and he says there's significant improvement, and he's got improving on his cognitive impairments, his communicative impairments, his mobility, self-care. Still says, I am unsure if he has transferable skills for a lighter level job necessary. So a little inconclusive on that. Again, this is a doctor. He's not a vocational expert. If all of this is true in April of 2007, what inference do we draw from the fact that the ALJ considers him still disabled on that date? I think that the ALJ was likely giving him the benefit of the doubt based on Dr. Hind's previous opinions that he would likely qualify for disability for 12 to 18 months, which is consistent with the ALJ's decision. Okay. What's the difference between Dr. Hind's view in April of 2007 and Dr. Hind's view in February of 2008? Because this is a date clearly on which the ALJ believes that he is disabled, and we have a medical opinion. Right. So what's the difference between April of 2007 and February of 2008? What's happened here? Well, in August 2007, Dr. Hind notes that plaintiff's memory is slowly improving, and that was key to the ALJ's finding of disability earlier. No question that every report continues to indicate that Brett is moving in a positive direction. Right. The question, I think the ultimate question, though, is did he ever arrive at the right place that he is capable of working? And I just don't see a medical opinion in here that suggests that he did, except for Dr. Kuka, who didn't look at him. Right. I mean, I think that there are two questions here. The first question is, is there medical improvement? And there, I think, clearly – I think everybody concedes there's medical improvement. And then the second question is whether the medical improvement relates to work, and that requires the ALJ to assess two different residual functional capacities. And so is – But the next question that's required by the regulations is, is the medical improvement that is related to his work sufficient that he is now capable of returning to work because he's not disabled? Right. And that's the ultimate question. It's the one I think that's addressed in point 13 in the ALJ's opinion. And so then the ALJ finds he's capable of full-time light work, which I don't think – you know, there's vocational expert testimony that supports that that would allow him to return to work. And then the question is, is that residual functional capacity supported by substantial evidence? And in this case, the ALJ refers to plaintiff's daily activities. He takes care of his – the friend he lives with, his two children, six hours a day while his friend is away at work. He cooks. He does his own laundry. He testifies he's able to lift 30 pounds, that he – excuse me, that he can walk five or six blocks. He doesn't address difficulties with his gross and fine motor skills that there seems to be some evidence of. He testifies to that. I don't believe that there's – I believe Dr. Hine says something about some mild feeling problems in his left hand. Mild paresis. I don't know how to pronounce that. Right hand, which – Right. And he's left-handed, so I mean that's – particularly when we're involved with light work, where it doesn't involve frequent handling. And was that included in the hypo to the VE? I do not – there were – the residual functional capacity does include some limitations as a result of that. And the same goes for how long he could walk and stand. I'm not sure that that was submitted to the VE either. There were limitations on his ability to push and pull with his extremities, which I believe was intended to account for. Right. I guess they said he could walk or stand six hours in an eight-hour day, but I'm not sure where that came from. I believe he had given weight to the state agency position, whose opinion in this case is not contradicted. If there are no additional questions. I do have one more, just hypothetically speaking. If we were to not be satisfied with the decision so far, would you recommend we remand, I assume? And if so, what would we remand for, as opposed to just a grant of benefits? I don't believe – I don't believe that there's evidence that would demand a payment of benefits because – So what would we remand for? I guess for the ALJ's consideration, you know, to reassess an RFC as of, you know, when he finds him not disabled. Would that permit additional examinations by doctors on this? It could, if the court wanted it to. Would that take the form of a contemporaneous finding, that is, a finding as of 2010, whether he's disabled? Or is everything going to have to go back to try and figure out in 2010 how good he was feeling in February of 2008? Right. I mean, I guess, you know, it would likely be a de novo review by the ALJ, as remands usually are. And so then, you know, everything is open. He's obviously – his disability through the 25th is still established, but then it's a de novo review after that. Okay. If the court has no additional questions, I would just ask that the court affirm, because the ALJ's decision is supported by substantial evidence. Thank you. Thank you. I think in terms of the slippery slope we face is that as of certainly August of 2007, the last medical record immediately before the finding of a medical improvement, the administration has found the conditions, the symptoms disabling as of that date. And so if we're going to go on and make a comparison in terms of improvement with dates before, what weight is there in terms of the final decision of the secretary for the condition on August 2007? Because that's the date we have a medical opinion, the date we have a finding by the administration that this gentleman is disabled, by whatever symptoms and medical condition he has. And so in terms of looking at improvement, I would suggest that any consideration below needs to focus on, is there an improvement from August to February of 2008, the date that they find the improvement. I don't think a remand is necessary for that decision because the record is before you, and between those two dates there's no improvement. So I don't think there's a reason for a remand as to those dates. In terms of something we talked about, in terms of Dr. Cook, I'd like to bring up, and I may only reference it because I'm running out of time, but Dr. English was hired by the administration to test and do testing in April of 2007. This is at the defendant's brief, page 13, and at that time he makes the opinion that Brent could only work a few hours a day in a semi-structured work setting with supervision, and I don't believe, contrary to the representation, that there was an ability to work or perform after that date. I don't think that was ever contradicted, but he was never seen again. Thank you. Thank you very much. We thank both counsel for the argument. Well presented.
judges: Wilken, Fletcher B. , Bybee